IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEVIN HOWELL,

    PLAINTIFF,

V.

DAEWON AMERICA, INC.,

    DEFENDANT(S).

Case No.: 2:19-cv-13

JURY TRIAL DEMANDED

# COMPLAINT

## I. JURISDICTION

1. This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This suit is authorized and instituted under 42 U.S.C. § 1981. This is a suit authorized and instituted under "Section 1981."

3. This is a Complaint for legal and equitable relief and to redress the defendant's retaliatory discharge in violation of Ala. Code § 25-5-11.1 brought pursuant 28 U.S. Code § 1367.

## II. PARTIES

4. Plaintiff, Devin Howell, ("Plaintiff" or "Howell") is a resident of Opelika, Lee County, Alabama, and performed work for the Defendant in the counties composing the Middle District of Alabama during the events of this case. Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the Northern Division.

5. Defendant Daewon America, Inc. ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama it is subject to service of process in Alabama.

6. Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

## III. FACTS

7. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

8. Plaintiff is a person of African ancestry.

9. Defendant hired Plaintiff on or about September 14, 2012.

10. Defendant employed Plaintiff as a Forklift Driver.

11. Plaintiff worked over 1250 hours in the 365 days preceding October 24, 2016.

12. On or about October 24, 2016, Plaintiff injured himself on the job when he was asked to run a machine by himself that coated stabilizer bars that normally required two employees.

13. As he was operating the machine, Plaintiff felt a pop in his left shoulder.

14. When plaintiff tried to lift with that shoulder, he found he could not do it.

15. Plaintiff called his supervisor, Anthony Martin over because he was in pain.

16. Martin took plaintiff to the emergency room.

17. After the injury, Plaintiff remained off work for four days.

18. After the injury, Plaintiff took at least one day off a week for his injury in most weeks until his employment was terminated.

19. Defendant did not offer Plaintiff FMLA leave for his serious health condition.

20. On or about June 2017, Plaintiff's lawyer called the plant looking for Plaintiff.

21. Plaintiff was not working on the day of the call.

22. When Plaintiff returned to work, Tracey Sanders, from Human Resources and James Robinson, the supervisor of the stabilizer department brought plaintiff into a meeting.

23. During the meeting, Sanders asked plaintiff why he had hired an attorney for his workers' compensation claim.

24. Plaintiff responded that he was not the getting results he needed going through the company's complaint process because nothing was being done to address the problems.

25. Sanders cautioned Plaintiff not to tell anyone on the job he had gotten a lawyer for his Workers' Compensation claims.

26. Plaintiff said that he had told no one.

27. Anderson asked Plaintiff whether he had told James Hinkle about my case.

28. Plaintiff told Anderson he had not told him anything.

29. Sanders and Robinson concluded the meeting.

30. About 10 days later, Robinson wrote plaintiff up for absenteeism related to his shoulder injury, a serious health condition.

31. On August 7, 2017, Plaintiff was driving a forklift when one of his co-workers, BK Lee, was blocking his path.

32. Lee is a person of Asian ancestry.

33. Plaintiff honked his horn to alert Lee of the need to clear the path in front of the fork lift.

34. Lee ignored the horn.

35. Plaintiff honked a second time trying to get Lee to clear the path, so the forklift could move safely about the plant.

36. Lee refused to move out of the forklift's path.

37. Plaintiff honked the horn a third time.

38. Again, Lee refused to move.

39. After Lee refused to move, Plaintiff reversed the forklift and turned to go around Lee.

40. As Plaintiff turned the forklift, Lee threw a key chain with a 10-millimeter wrench and seven keys at Plaintiff.

41. The keychain and wrench struck Plaintiff in the head.

42. After the incident, Plaintiff got off the forklift and picked up the keys.

43. Plaintiff gave Lee the keys.

44. After plaintiff gave the keys to Lee he went to Human Resources and reported Lee's assault.

45. Sanders told Plaintiff that the company would investigate the incident.

46. On August 8, 2017, Plaintiff went back to Human Resources and asked what had come of the investigation.

47. Sanders said the company was still investigating.

48. At the end of the day, Robinson came and got Plaintiff for a meeting.

49. During the meeting, Sanders told plaintiff he was being written up for a safety violation related to the incident.

50. Sanders also explained that because it was his third write up in 365 days, he would be terminated.

51. Defendant terminated Plaintiff's employment on August 8, 2017August 9, 2017.

52. As of Plaintiff's termination, Plaintiff held the position of Forklift Driver.

53. Defendant hired Lucious Carter.

54. Shortly after Defendant terminated Plaintiff's employment, Defendant placed Lucious Carter in Plaintiff's former position.

55. Lucious Carter had not had a workers' compensation injury.

56. Luscious Carter did not qualify for FMLA.

57. Defendant's Human Resources Assistant, Tracey Sanders informed Plaintiff that Defendant terminated his employment.

58. Defendant' Human Resources Assistant, Tracey Sanders, decided to terminate Plaintiff's employment.

59. Tracey Sanders decided to terminate Plaintiff's employment, in whole or part, because of Plaintiff's exercise of FMLA rights.

60. On August 8, 2017, Defendant terminated Plaintiff's employment for the stated reason of having three write ups in 365 days.

61. Daewon's handbook says there is zero tolerance for violence or horseplay which will cause automatic termination.

62. BK Lee was not terminated for throwing a keychain with a wrench at Plaintiff while he was operating a forklift.

63. Defendant did not terminate BK Lee for the stated reason of having three or more writeups in 365 days.

64. BK Lee did not take days off for a workers' compensation injury.

65. BK lee was not eligible for Family and Medical Leave.

66. Defendant did not terminate Victor Howell, for the stated reason of Three or more occurrences in 365 days.

67. Victor Howell did not take days off for a workers' compensation injury.

68. Victor Howell was not eligible for Family and Medical Leave.

69. Defendant did not terminate Jesse Daniel, for the stated reason of having three or more writeups in 365 days.

70. Jesse Daniel did not take days off for a workers' compensation injury.

71. Jesse Daniel was not eligible for Family and Medical Leave.

72. Defendant did not terminate Mike Pink for the stated reason of having three or more writeups in 365 days.

73. Mike Pink did not take days off for a workers' compensation injury.

74. Mike Pink was not eligible for Family and Medical Leave.

75. Plaintiff began employment with defendant on or about as a .

76. Defendant terminated Plaintiff's employment on or about .

## IV. COUNT ONE - 42 U. S. C. § 1981 DISCHARGE

77. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

78. Plaintiff is a person of African ancestry.

79. Plaintiff was qualified for the position of Forklift driver.

80. On or about August 8, 2017, Defendant terminated Plaintiff's employment.

81. Defendant's decision to terminate Plaintiff's employment was made, in whole or part, because of race in violation of 42 U. S. C. § 1981.

82. Because of Defendant's violation of 42 U. S. C. § 1981, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## V. COUNT TWO - FMLA INTERFERENCE

83. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

84. During the 12-month period before, Defendant employed Plaintiff for at least 1,250 hours of service.

85. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's, accident and shoulder injury.

86. During the week of October 24, 2016, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

87. Before Plaintiff's October 24, 2016 injury, Plaintiff had never informed Defendant of the need for FMLA leave.

88. Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

89. Defendant failed to provide Plaintiff with an FMLA Designation Notice form.

90. Defendant failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form OR FMLA Certification of Health Care Provider for Family Member's Serious Health Condition form.

91. Defendant interfered with Plaintiff's FMLA rights by not allowing her to commence leave.

92. On or about August 8, 2017, Defendant terminated Plaintiff's employment without explanation.

93. Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which he needed treatment through her doctor.

94. Because of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VI. COUNT THREE - FMLA RETALIATION

95. Plaintiff incorporates by reference and realleges each of the preceding paragraphs as if restated herein.

96. During the 12-month period before October 26, 2016, Defendant employed Plaintiff for at least 1,250 hours of service.

97. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year before October 26, 2016.

98. During the week of October 26, 2016, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

99. On October 26, 2016, Plaintiff provided notice of unforeseeable FMLA leave.

100. Before Plaintiff's October 26, 2016 accident and injury, Plaintiff had never informed Defendant of a need for FMLA leave.

101. Defendant willfully failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

102. Defendant willfully failed to provide Plaintiff with an FMLA Designation Notice form.

103. Defendant willfully failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

104. Defendant terminated Plaintiff's employment on or about August 8, 2017.

105. Defendant's employees knew that Plaintiff suffered from FMLA qualifying conditions for which he needed treatment from his doctor.

106. Tracey Sanders informed Plaintiff that Defendant terminated his employment.

107. Defendant decided to terminate Plaintiff's employment, in whole or part, because of Plaintiff's exercise of FMLA rights.

108. Because of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VII. COUNT FOUR – ALA. CODE § 25-5-11.1 - RETALIATORY DISCHARGE

109. Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if set forth fully herein.

110. Defendant and Plaintiff engaged in an employer/employee relationship.

111. On October 26, 2016, Plaintiff suffered an on-the-job injury.

112. Within minutes of Plaintiffs on-the-job injury, Defendant had notice of Plaintiff's on-the-job injury.

113. Defendant terminated Plaintiff's employment on August 8, 2017.

114. Defendant willfully terminated Plaintiff for suffering an on-the-job injury and exercising of his right to receive workers' compensation benefits in violation of Alabama Code § 25-5-11.1.

115. Plaintiff has been damaged because of Defendant's retaliatory discharge by Defendant, suffering loss of pay and mental anguish.

## VIII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

B. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms Alabama Code § 25-5-11.1.

C. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at

the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

D.  Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position would have had, had not been terminated;

E.  Award back pay, with employment benefits, front pay, liquidated damages; compensatory damages; punitive damages; special damages; nominal damages;

F.  Attorneys' fees and costs;

G.  Plaintiff requests that the Court award Plaintiff equitable relief as provided by law; and,

H.  Any different or additional relief as determined by the Court to which Plaintiff is entitled.

_____
Kira Fonteneau

_____
Felicia T. Long

**OF COUNSEL:**
The Fonteneau Firm LLC
A Member of the Five Points Law Group LLC
2151 Highland Avenue, Suite 205
Birmingham, Alabama 35205
T: 205.564.9005 F: 205.564.9006

**DEFENDANT'S ADDRESS:**

DAEWON AMERICA, INC.
c/o Hee Yong Bang
4600 Northpark Drive
Opelika, Alabama 36801